IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARY FENDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 12-1364-GMS |
| ) | |
| DELAWARE DIVISION OF REVENUE, ) | |
| ) | |
| MICHAEL SMITH, and ) | |
| ) | |
| THOMAS EOPPOLO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

**I.     INTRODUCTION**

The plaintiff, Mary Fender ("Fender"), filed this lawsuit against the Delaware Division of Revenue ("DOR"), and two employees of the DOR, Michael Smith ("Smith") and Thomas Eoppolo ("Eoppolo") (collectively, "the Defendants") on October 25, 2012. (D.I. 1.) The complaint raised a number of claims under federal and Delaware law for alleged mistreatment of Fender while employed by the DOR. Specifically, the complaint asserted claims of: (1) First Amendment retaliation in violation of 42 U.S.C. § 1983 against all Defendants ("Count I"); (2) violation of the Delaware Whistleblowers' Protection Act ("WPA"), under 19 Del. C. § 1701 *et seq.*, against all Defendants ("Count II"); and (3) tortious interference with business relationships against all Defendants ("Count III"). Fender sued Smith and Eoppolo in both their individual and official capacities.

On December 19, 2012, the Defendants filed a motion to dismiss for failure to state a claim. (D.I. 9.) The court granted in part and denied in part the Defendants' motion to dismiss, dismissing Counts I and III as against the DOR, and dismissing Count III as against Smith and Eoppolo in their official capacities. (D.I. 17.) Additionally, in the present briefing, Fender voluntarily dismisses Count II, as against Smith and Eoppolo, and Count III in its entirety. (D.I. 42 at 1 & n.1.) The only claims that remain, therefore, are the § 1983 claims against Smith and Eoppolo, and the WPA claim against the DOR. (*Id.*)

Presently before the court are the DOR's motion for summary judgment, and Smith and Eoppolo's joint motion for summary judgment. (D.I. 34; D.I. 36.) For the reasons stated below, the court will grant the Defendants' motions for summary judgment.

## II. BACKGROUND

Fender began working for the DOR in July 2003 as a Senior Tax Auditor (now referred to as Tax Auditor III). (D.I. 44, Ex. 119 at A816.) Her position was located in the Carvel Building in Wilmington, Delaware initially, but in 2005 or 2006, she was transferred to the "Corporate Commons" Building in New Castle, Delaware. (*Id.*) Fender worked within the Personal Income Tax ("PIT") group, and among her job responsibilities was to create auditing "projects," which were then assigned to other members within PIT. (*Id.* at A817). As part of these projects, Fender would send out letters—typically several hundred or thousands—to people who were believed to be non-compliant with their tax filing obligations. (*Id.*, Ex. 79 at A542; Ex. 119 at A818.)

Between 2009 and 2010, there was a reorganization within the DOR—the PIT and Business Audit groups were combined as a single audit department, managed by Smith. (D.I. 44,

Ex. 119 at A826, A822.) Eoppolo became Fender's direct supervisor. (*Id.* at A826.) In April 2010, Smith transferred Fender's position back to Wilmington and requested that she return to Wilmington by the beginning of May 2010. (*Id.*) Fender, however, remained at the Corporate Commons building in New Castle until December 14, 2010. (*Id.* at A827.) Soon after returning, Fender sought a transfer to the DOR office in Dover, Delaware, on December 20, 2010. (*Id.*) Smith rejected her transfer application. After rejecting her transfer, Smith noted in a message to Director Pat Carter that Fender was trying to "sell her agenda."[1] (*Id.*, Ex. 94 at A667–68.)

Fender went to Deputy Director Colleen Yegla on December 22, 2010 to complain about the denial of transfer and general unfair treatment. (D.I. 44, Ex. 119 at A836.) Specifically, Fender explained that Smith had recently approved a transfer request for a male employee, Bill Kirby, from Wilmington to another DOR satellite branch. (*Id.*) Additionally, Fender complained that Eoppolo had called her on her personal cell phone while she was at a doctor's appointment, that Eoppolo was not approving her financial transactions in a timely manner, and that she did not approve of the way Eoppolo was managing her. (*Id.*, Ex. 74 at A449–51, A458.) Ms. Yegla was not Fender's supervisor and took no action on Fender's complaints.

Fender met several times with Ms. Yegla between December 2010 and February 2011 to complain about problems with Smith and Eoppolo. Unsatisfied with these discussions, Fender filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 11, 2011, listing Eoppolo's unwanted phone calls and Smith's denial of her transfer request as examples of sex and age discrimination. (D.I. 44, Ex. 129.) Fender subsequently spoke with Ms. Yelga and Mary Jane Donnelly, the DOR's Human Resource Manager, to explain that she

---

[1] What Smith meant by "agenda" is unclear from his deposition testimony. He stated, on the one hand, that Fender had previously complained to him about gender discrimination within the DOR. (D.I. 44, Ex. 94 at A668.) On the other hand, Smith later stated that Fender's agenda was her displeasure in being unable to work on projects. (*Id.*)

3

had filed an EEOC complaint because she was discriminated against as a female. (*Id.*, Ex. 119 at A831, A839). Fender ultimately did not pursue her EEOC complaint.

Fender noticed a change in her work after making her complaints to Ms. Yegla, Ms. Donnelly, and the EEOC.[2] According to Fender, Smith and Eoppolo reprimanded her on several occasions without cause, (D.I. 44, Ex. 44), and limited her ability to plan meetings with her colleagues. (*Id.*, Ex. 37.) Additionally, Eoppolo micromanaged Fender more extensively and reduced her job responsibilities, *e.g.*, taking projects away and limiting the number of letters she could send. (*Id.*, Ex. 119 at A858–59.) Other auditors did not have their work reduced in this way. (*Id.*, Ex. 135, ¶ 21.)

In July of 2011, Fender was involved in a car accident and left work on short-term disability leave. (D.I. 44, Exs. 60–61.) Fender asserts that Eoppolo wrongfully reprimanded her for not updating him with her work availability, although Fender had previously sent an update to a member of HR. (*Id.*, Ex. 61.) Fender was scheduled to return to work in February 2012, but delays in her surgery pushed this date back to March 2012. (*Id.*, Ex. 119 at A851–52.) Fender's disability leave, however, expired in January 2012, and Durae Johann, the Return-to-Work Coordinator for the DOR, notified Fender that her job had been terminated. (*Id.* at A850.) Fender had the option of reapplying for her position, which she declined. (*Id.* at A850–51.)[3]

Before the court are Fender's remaining claims against the Defendants. Against Smith and Eoppolo, Fender asserts a claim for First Amendment retaliation in violation of § 1983. Specifically, Fender argues that her complaints to Ms. Yegla, Ms. Donnelly, and the EEOC

---

[2] The court recognizes that there are numerous factual disputes between the parties about what took place in the time following Fender's EEOC complaint. The court adopts Fender's version of the facts at this stage. The court, however, notes that it is unnecessary to delve extensively into these facts, as they do not materially affect the ultimate outcome. The court also finds it unnecessary to detail facts concerning alleged violations by Ms. Yegla and Ms. Donnelly, as they are not parties in this lawsuit.

[3] The court omits as unnecessary additional facts concerning events that took place after Fender's termination.

4

constituted protected First Amendment speech, and that Smith and Eoppolo, by their subsequent actions, impermissibly retaliated against her. (D.I. 1, ¶¶ 76–80.) Against the DOR, Fender asserts a claim for violation of Delaware's WPA. Specifically, Fender argues that her complaints were protected whistle-blowing activity, and that adverse actions taken by the DOR in response were in violation of the WPA. (*Id.*, ¶¶ 81–89.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also* Celotex *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material facts exists, the district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). As such, a nonmoving party must support their assertion that a material fact is in dispute by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Count I: First Amendment Retaliation in Violation of § 1983

Smith and Eoppolo argue that the § 1983 claims fail because (1) Fender has failed to adduce evidence establishing a *prima facie* case of retaliation, and (2) they are immune from suit under either the doctrine of qualified immunity or Delaware's Tort Claims Act, 10 Del. C. § 4001.

Conversely, Fender argues that she has satisfied her burden of proof and that Smith and Eoppolo are not immune from suit under either theory of immunity. For the reasons stated below, the court will grant Smith and Eoppolo's motion for summary judgment.

1. <u>Sufficiency of Evidence</u>

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford–El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981). Proof of a retaliation claim requires the plaintiff to demonstrate (1) she engaged in protected activity; (2) she was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The Third Circuit has stated that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003). Claims of unconstitutional retaliation must, however, be evaluated critically, as they are "fraught with the potential for abuse." *See Blizzard v. Hastings*, 886 F. Supp. 405, 409 (D. Del. 1995). This is especially true in the government employment context. *See Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter.").

The court looks first at whether Fender's complaints constituted protected activity. This question is a matter of law. *Balas v. Taylor*, 567 F. Supp. 2d 654, 663 (D. Del. 2008) (citing *Hill*

7

v. *City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005)). For a public employee's speech to be protected, (1) she must have made the statements as a citizen, (2) the statement must involve a matter of public concern, and (3) the government employer must not have an adequate justification for treating the employee differently from a member of the public. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Fender asserts that Smith and Eoppolo retaliated against her for complaints made to Ms. Yegla, Ms. Donnelly, and the EEOC between December 2010 and February 2011. (D.I. 38 at A146). Fender argues that these complaints were about matters of public concern—specifically discrimination against women "as a whole" within the DOR. (D.I. 43 at 12.) Fender, however, is unable to point to facts in the record supporting her position that sex discrimination, as a larger problem within the DOR, was at the heart of her complaints. In her deposition testimony, Ms. Yegla only recounts complaints of "unfair treatment," specific to Fender—*e.g.*, Eoppolo calling Fender's cell phone and failing to approve Fender's financial transactions in a timely manner; Smith and Eoppolo's refusal to grant Fender's transfer request. (D.I. 44, Ex. 74 at A448–58.) Indeed, Ms. Yegla could not recall whether Fender's complaints were "based on gender" at all. (*Id.* at A457.) Moreover, Fender's own deposition testimony fails to allege that her complaints to Ms. Yegla went beyond the personal. (*Id.*, Ex. 119 at A836–37.)

Fender's EEOC complaint and subsequent discussion with Ms. Donnelly suffer the same shortcomings. Although Fender's EEOC complaint alleged other instances of sex discrimination within the DOR, Fender included this information as ancillary support for her individualized claims. (*Id.*, Ex. 129, A948–50.) Specifically, the EEOC questionnaire asked "Why do you believe these actions [against Fender] were discriminatory?" and asked for others who were

8

treated similarly. (*Id.*) The complaint itself, however, was solely directed to the cell phone calls Fender received and to her request for transfer being denied. (*Id.* at A949.) Similarly, Fender's discussion with Ms. Donnelly only mentioned the EEOC complaint and "the fact that *I* [*Fender*] was being discriminated against as a female." (*Id.*, Ex. 119, at A839 (emphasis added)).

Taken together in light of their "content, form, and context . . . , as revealed by the whole record," these statements do not amount to protected activity under the First Amendment. *See Rankin v. McPherson*, 483 U.S. 378, 384 (1987). Although Fender contends that she had made numerous statements about wider sex discrimination within the DOR in the past—as evidenced by Smith's testimony (D.I. 43 at 12; D.I. 44, Ex. 94 at A668)—the record does not support her contention that the specific complaints at issue dealt with the alleged environment of discrimination at the DOR. Thus, Fender has not established that they were of public concern.

Fender is correct that she does not forfeit her right to comment on matters of public concern simply by having a personal stake in the matter. (*Id.* at 13–14); *see Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988). But Fender fails to provide any evidence that the specific complaints—to Ms. Yegla, Ms. Donnelly, and the EEOC—were anything other than the personal grievances of an employee, seeking personal relief.[4] *See Connick*, 461 U.S. at 147

---

[4] Although not identified in her briefing, in her July 14, 2014 affidavit, Fender for the first time argues that her complaints to Ms. Yegla included charges of discrimination against other women in the DOR and that her EEOC complaint was to "remedy the treatment" of herself and other women. (D.I. 44, Ex. 133, ¶¶ 5–6.) This is contrary to Fender's previous deposition testimony, (*Id.*, Ex. 119 at A836–37 ("Q. . . . And did you discuss anything else [with Ms. Yegla] that you felt constituted gender discrimination. A. No. I was very clear in the fact that I felt because I was a woman I didn't get the same transfer that was afforded Bill Kirby.")), and even the text of the complaint. (D.I. 1, ¶ 39 ("Because of the treatment that Plaintiff was receiving . . . , Plaintiff complained to Colleen Yegla."))

Fender's affidavit does not create a *genuine* issue of fact under the "sham affidavit doctrine." According to the doctrine, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). The Third Circuit adopts a "flexible approach" to the sham affidavit doctrine, and the court will not disregard an affidavit if it is bolstered by independent evidence or when the party can explain the contradiction. *Id.* at 254.

But Fender's statements that she complained of broader discrimination to Ms. Yegla are unsupported, and she gives no explanation for the shift from her prior statements. "[P]rior depositions are more reliable than affidavits," and Fender cannot create a novel dispute, not identified in the complaint, after receiving

("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency . . . ."); *Montone v. City of Jersey City*, 709 F.3d 181, 194 (3d Cir. 2013) ("[N]ot every statement about sexual discrimination involves a matter of public concern . . . ." (quoting *Campbell v. Galloway*, 483 F.3d 258, 269 (4th Cir. 2007))); *see Torres v. City of Phila.*, 907 F. Supp. 2d 681, 686 (E.D. Pa. 2012) ("[P]ublic employees' complaints about personal discrimination are not matters of public concern when . . . they do not involve elected officials, there is no claim of a wider pattern of inappropriate conduct, the complaint is only about an individual's own abuse and mistreatment, and the conduct was limited in scope and duration." (citing *Bell v. City of Phila.*, 275 F. App'x. 157, 159 (3d Cir. 2008))).[5]

Because Fender's complaints did not constitute speech on matters of public concern, the court declines to comment on the additional elements of Fender's § 1983 retaliation claim, or on Smith and Eoppolo's immunity arguments. As a result of Fender's failure to established a *prima facie* case of First Amendment retaliation, the court grants Smith and Eoppolo's motion for summary judgment.

### B. Count II: Violation of Delaware's Whistleblowers' Protection Act

The DOR asserts that Fender's WPA claim fails because (1) Eleventh Amendment sovereign immunity bars suit against a state agency, and (2) Fender has failed to adduce sufficient evidence to establish a *prima facie* case of a WPA violation.

---

Defendants' summary judgment motions. *See id.* at 253. The court disregards these conflicting statements in Fender's affidavit and finds there is no genuine dispute of material fact.

[5] The court notes that Fender has simply failed to establish a *prima facie* case for First Amendment retaliation in violation of § 1983. The court expresses no view on whether Fender has made a *prima facie* case of Title VII discrimination or retaliation, which Fender has not asserted.

Conversely, Fender argues that Delaware has waived its sovereign immunity with respect to the WPA and that she has satisfied her burden of proof. For the reasons stated below, the court will grant the DOR's motion for summary judgment.

1. Eleventh Amendment Immunity

The Eleventh Amendment prevents federal courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. CONST. amend. XI. Therefore, in general, states and their agencies and departments are immune from suit brought by private parties in the federal courts, "regardless of the nature of the relief sought." *Pennhurst State Sch & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). The only exceptions to this general rule are (1) where the state has consented to suit or (2) where Congress has clearly indicated its intent to abrogate state immunity. *Id.* at 98–100. In both exceptions, intent to permit suit must be "unequivocally expressed." *Id.* at 99. This case involves an application of the WPA, a Delaware statute, so only the former exception is at issue.

The DOR and Fender disagree as to whether Delaware has consented to suit in cases implicating the WPA. Fender argues that the language of the WPA indicates a clear intent by the Delaware General Assembly to waive immunity. (D.I. 42 at 15). In support, Fender points to *Tomei v. Sharp*, which states: "[Delaware] has given itself the right to be sued and the employee a right to sue. This acts as a waiver. The General Assembly has, therefore, clearly evidenced an intent that the State not enjoy immunity as to the violations specified in the [WPA]." 902 A.2d 757, 765 (Del. Super. Ct. 2006) (footnote omitted). The DOR, however, argues that Delaware has only waived its sovereign immunity in state court, but it has not consented to suit in federal court, as required under the Eleventh Amendment. (D.I. 34 at 13–14.)

11

The court agrees with the DOR. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99 (emphasis in original). As such, "[a] state can waive its sovereign immunity from suit in state court without waiving the eleventh amendment's bar to suits against the state in federal court." *Leadbeater v. Port Auth. Trans-Hudson Corp.*, 873 F.2d 45, 48 (3d Cir. 1989); *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts...."). In order to find a waiver, moreover, "[c]onsent to suit in federal court must be by 'most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Leadbeater*, 873 F.2d at 48 (second alteration in original) (quoting *Welch v. Tex. Dept. of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987)).

Fender has failed to point to any "express language" or "overwhelming implications" of WPA as to satisfy her "stringent" burden. *Id.* Rather, she discusses the WPA's predecessor statute and the "inherent" immunity in the WPA.[6] (D.I. 42 at 15). This showing is insufficient. The court finds that Delaware has not consented to be sued in federal court under the WPA. The DOR, as a Delaware state agency, is immune from suit in federal court under the Eleventh Amendment for Fender's WPA claim.

2. Sufficiency of Evidence

Alternatively, the court finds that there is also no genuine issue for the factfinder on which Fender could succeed in her WPA claim against the DOR.

---

[6] Fender cites two federal court cases interpreting the WPA's predecessor statute, 29 Del. C. § 5115, to support her argument that the WPA waived Delaware's Eleventh Amendment immunity in federal court. (D.I. 42 at 15 & n.8); *see Hauge v. Brandywine Sch. Dist.*, 131 F. Supp. 2d 573 (D. Del. 2001); *McHugh v. Bd. of Educ. of the Milford Sch. Dist.*, 100 F. Supp. 2d 231 (D. Del. 2000). However, neither of these cases actually discusses Eleventh Amendment immunity, and the Eleventh Amendment does not apply to school boards, the defendants in those cases. *See Mt. Healthy City Sch. Dist. Bd. of. Educ. v. Doyle*, 429 U.S. 274 (1977).

The WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:
> > (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a *violation* which the employee knows or reasonably believes has occurred or is about to occur . . . .
>
> 19 Del. C. § 1703 (emphasis added).

Additionally, the WPA defines "violation" to be:

> An act or omission by an employer . . . that is:
> a. Materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, *to protect employees or other persons from health, safety, or environmental hazards* while on the employer's premises or elsewhere; or
> b. Materially inconsistent with, and a serious deviation from, *financial management or accounting standards* implemented pursuant to a rule or regulation promulgated by the employer or a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, *to protect any person from fraud, deceit, or misappropriation of public or private funds or assets under the control of the employer.*
>
> *Id.* § 1702(6) (emphasis added).

The statute is clear: in order to have an actionable claim under the WPA, an employee must have "blown the whistle" on a violation *as defined by the statute*.

Fender argues that her complaints to Ms. Yegla, Ms. Donnelly, and the EEOC about sex discrimination (in violation of Title VII) are sufficient to create a genuine issue under the WPA. (D.I. 42 at 17.) However, this argument ignores the express language of the statute limiting violations to cases involving "health, safety, or environmental hazards" or "fraud, deceit, or misappropriation of . . . funds or assets under the control of the employer." 19 Del. C. § 1702(6).

13

These defined categories demonstrate the WPA's limited application in "protecting employees who report violations of law *for the benefit of the public.*" See Smith v. Del. State Univ., 47 A.3d 472, 476 (Del. 2012) (emphasis added). Fender does not try and fit her sex discrimination claims—regardless of whether they are individual or more widespread—within the language of the statute; rather, she merely states that "complaints of said sex discrimination would be protected by the WPA." (D.I. 42 at 17). This conclusory assertion is not supported.[7] Fender has failed to establish a *prima facie* violation of the WPA. Thus, the court will grant the DOR's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons the court will grant both Smith and Eoppolo's motion for summary judgment and the DOR's motion for summary judgment.

Dated: September 15, 2014

UNITED STATES DISTRICT COURT

---

[7] In its order granting in part and denying in part the Defendants' motion to dismiss, the court found that Fender had sufficiently alleged facts to survive the motion to dismiss. (D.I. 17 at 2–3 n.1.) Specifically, the court stated that Fender's allegations concerning past-due tax revenues were sufficient to "anchor" her WPA claim with § 1702(6)(b). (*Id.*) Fender no longer pursues this argument in her present briefing, and the allegations in the complaint are insufficient to raise a genuine issue for the factfinder.

14